UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JQ.H and JZ.H, by and through their guardian ad litem, LINDA THOMAS,<br><br>                      Plaintiffs,<br>v.<br>COUNTY OF SAN DIEGO, *et al.*,<br>                      Defendants. | Case No.: 3:18-cv-924-BTM-DEB<br><br>**ORDER GRANTING THE COUNTY OF SAN DIEGO'S MOTION TO DISMISS**<br><br>**[ECF Nos. 72 (Under Seal), 73 (Redacted) ]** |

      Pending before the Court is Defendant County of San Diego's ("the County") motion to dismiss the Plaintiffs' fourth cause of action for municipal liability under *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978).  (ECF Nos. 72 (under seal) and 73 ("Mot.").)[1]  For the reasons discussed below, the Court grants the County's motion.

**BACKGROUND**

1. <u>Facts</u>

---

[1] Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

1

The Court assumes the parties' familiarity with the facts and procedural history of the case and recounts only the facts relevant to this motion.

Plaintiffs JQ.H and JZ.H are two minors born in or around October 2002. (ECF No. 62 ("TAC"), ¶¶ 3–4.) According to the TAC, on May 17, 2011, JQ.H told a school counselor, Defendant Kristen Dunphy, that his mother "hits him with a cell phone charging cord, and sometimes a belt with a buckle." (*Id.* at ¶ 23.) He also showed Ms. Dunphy "bruising on his outer right hip area." (*Id.*) The TAC also alleges that Ms. Dunphy "strip searched" JQ.H at some unspecified time and place without his mother's consent. (*Id.* at ¶ 25.) Ms. Dunphy drafted an Incident Report that recounts her meeting with JQ.H. (*Id.* at ¶¶ 22–23.)

Defendants Robbins and Curran, officers with the San Diego Police Department (a city rather than County entity (*Id.* at ¶ 7), arrived on the scene in response to Ms. Dunphy's child abuse report. (*Id.* at ¶ 27.) The TAC alleges that, according to the Incident Report, Officers Robbins and Curran strip searched both JQ.H and JZ.H and took photos. (*Id.* at ¶¶ 28–29.)

The Detention Report, written by social workers Sarah Sturm and Lorena Ortiz (also Defendants in this case) summarizing JQ.H's and JZ.H's May 17, 2011 interviews, states that the officers interviewed the Plaintiffs individually.[2] (*Id.* at ¶¶ 31–33; ECF No. 72-1 ("Detention Report") (under seal), at 28.) They both disclosed their mother hit JQ.H with a belt. (Detention Report, 28–29.) The officers subsequently placed the Plaintiffs in protective custody at Polinsky's Children's Center. (*Id.*)

At Polinsky, the Plaintiffs met with Ms. Sturm, a County social worker and told her about their mother's abuse. (TAC, ¶¶ 38–46.) A Polinsky nurse examined

---

[2] Generally, the court does not consider material beyond the pleadings in ruling on a motion to dismiss. *See United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011). Because the TAC references and relies on the Detention Report, the Court considers it under the incorporation-by-reference doctrine. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

JQ.H and he once again disclosed his mother's abuse. (*Id.* at ¶¶ 54, 60.) Dr. Wendy Wright, from Rady Children's Hospital, reviewed the nurse's examination report and determined the injuries were indeed "inflicted." (*Id.*)

On June 9, 2011, a County social worker interviewed the Plaintiffs at school and they once again disclosed their mother's abuse.[3] (*Id.* at 77; ECF No. 72-2 (under seal), 5–6.)

On May 19, 2011, after Officer Curran placed the Plaintiffs in protective custody, Ms. Sturm filed a petition with the juvenile dependency court. (ECF No. 72-3 (under seal).)[4]  After a May 20, 2020, custody hearing, the juvenile dependency court declared the Plaintiffs dependents of the court and ordered that they be placed in out-of-home care. (ECF No. 72-4 ("Custody Order") (under seal), 2–3.; TAC, ¶ 78.) Ms. Harris did not regain custody of the Plaintiffs until July 2019. (TAC, ¶ 79.)

2. Procedural History

On May 11, 2018, the Plaintiffs and Ms. Harris filed suit against the County and various related individuals and entities. (ECF No. 1.) The County filed a motion to dismiss the original complaint, which Rady and Dr. Wright joined. (ECF Nos. 6, 7, 9.) The Court granted the motion and granted leave to amend. (ECF No. 21.) The Plaintiffs filed a first amended complaint (ECF No. 22) and then a second amended complaint ("SAC") shortly thereafter (ECF No. 27). Rady and Dr. Wright each filed motions to dismiss the SAC. (ECF Nos. 31, 32, 33.)

The Court held a hearing on these motions on December 2, 2019. The Court granted the motions in a written order. (ECF No. 59.) It dismissed Ms. Harris from the case because the statutes of limitations on her claims had all run, but found

---

[3] Because the TAC references and relies on the Jurisdiction Report, the Court considers it under the incorporation-by-reference doctrine. *See Knievel*, 393 F.3d at 1076.

[4] The Court grants the County's request for judicial notice of all juvenile custody filings because the Court may take judicial notice of state court proceedings. *See Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998)(granting judicial notice of pleadings filed in a related state court action).

that the statutes of limitations for JQ.H and JZ.H are tolled because they are still under eighteen years old. (*Id.*)  The Court dismissed JQ.H and JZ.Hs' state law claims with prejudice for failure to timely present them to the California Department of General Services.  Cal. Gov. Code §§ 911.2, 915.  It dismissed the federal claims for insufficiency under Federal Rules of Civil Procedure 8 and 12(b)(6).  The Court granted Plaintiffs leave to amend and explained that the third amended complaint would be their "final opportunity." (ECF No. 59, 14:27–15:1.)

Plaintiffs JQ.H and JZ.H filed the TAC, which the Court later sealed.  (ECF No. 62 ("TAC") (under seal.)  The publicly available, redacted version of the TAC was filed on June 3, 2020.  (ECF 113.)

Rady and Dr. Wright filed motions to dismiss the TAC.  (ECF Nos. 67, 69.) The Court granted their motions and dismissed causes of action two and three with prejudice against Rady and Dr. Wright for failure to state a claim.  (ECF No. 115.)

The County moved to dismiss claim four on the ground that the TAC fails to state a plausible *Monell* claim.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8, each pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  "Each allegation must be simple, concise, and direct." *Id.* 8(d)(1).

Dismissal under Rule 12(b)(6) for failure to state a claim is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990).  In considering whether the

complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *NL Indus., Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir. 1986).

"To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *See Iqbal*, 556 U.S. at 678 (internal quotation and citation omitted).

## DISCUSSION

1. Legal Standard

A public entity is subject to liability under 42 U.S.C. § 1983 only when a violation of a federally protected right can be attributed to (1) an express municipal policy, such as an ordinance, regulation or policy statement, see *Monell*, 436 U.S. at 691; (2) a "widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law," see *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); (3) the decision of a person with "final policymaking authority," see *id.* at 123; or (4) inadequate training that is deliberately indifferent to an individual's constitutional rights, see *City of Canton v. Harris*, 489 U.S. 378 (1989).

After establishing one of the above methods of liability, the plaintiff must show that the challenged municipal conduct was both the cause in fact and the proximate cause of the constitutional deprivation. *Connick v. Thompson*, 563 U.S. 51, 60 (2011); *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

2. Application

The Plaintiffs allege the following policies violated their Fourth Amendment rights:

a. The policy of removing a child from the care, custody, and control of her parent without a warrant or exigent circumstances or exception to the warrant requirement;

b. The policy of subjecting minors to highly invasive medical examinations without parental consent, a warrant, or exception to the warrant requirement.

c. The policy of using trickery, duress, fabrication and/or false testimony and/or evidence, and in failing to disclose exculpatory evidence, in preparing and presenting reports and court documents to the court, causing an interference with Plaintiffs rights, including those as to familial relations;

d. By acting with deliberate indifference in implementing a policy of inadequate training, and/or by failing to train its officers, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals, including those under the Fourteenth Amendment, when performing actions related to child abuse and dependency type proceedings;

e. The policy of setting forth allegations in Juvenile Dependency Petitions against parents claiming they suffer from psychological disorders and/or are influencing the minor child to make false reports of sexual abuse, regardless of whether or not reasonable and articulable evidence exists at the time to support the claims set out in the petition or reports under penalty of perjury;

f. The policy, practice, or custom of making knowingly false allegations of misconduct in juvenile dependency petitions and/or reports as a means of intimidating parents, by coercion, into accepting the wrongful recommendations and orders based on falsified evidence, whether justified by extant evidence or not, thereby enabling the county to keep the family in the juvenile dependency system and record the case as a positive outcome for purposes of statistical analysis related to funding by the State and Federal governments; and

g. The custom, policy, and or practice of fraudulently accusing parents

of making false allegations where no evidentiary basis exists. (TAC, ¶¶ 107(a)–(g).)  The Court addresses each alleged policy in turn.

### a. Policy of Removing Without Children Justification (¶ 107(a))

The Plaintiffs claim the County's policy of "removing a child from the care, custody, and control of her parent without a warrant or exigent circumstances or exception to the warrant requirement" violated their Fourth Amendment rights to be free from unlawful seizures.  (TAC, ¶¶ 106–110.)

The County argues that the Plaintiffs' claim cannot rely on an alleged policy of removing children without justification because they do not allege a County acted pursuant to this policy.  (Mot. , 4:13–5:10.)  More specifically, the Plaintiffs do not allege that a County employee actually took them from their mother's custody.  (*Id.* at 4:15–20.)

Indeed, the TAC alleges that County social workers met with the Plaintiffs at Polinsky (TAC, ¶ 33), but it was the San Diego police officers, employed by the city not the County, who initially took the Plaintiffs into custody and brought them to Polinsky (Detention Report, 10, 19–20), and the juvenile dependency court that ultimately removed the Plaintiffs from Ms. Harris's custody.  (Custody Order (under seal), 2–3, 10–15.)  The Plaintiffs previously alleged that the "San Diego Police took the boys into custody after responding to a call from an elementary school counselor who called in a child abuse request" in their original complaint (ECF No. 1, 3:22–25), and omitted this allegation in their successive amended complaints. *See Huey v. Honeywell*, 82 F.3d 327, 333 (9th Cir. 1996) ("When a pleading is amended or withdrawn, the superseded portion ceases to be a conclusive judicial admission; but it still remains as a statement once seriously made by an authorized agent, and as such it is competent evidence of the facts stated, though controvertible, like any other extrajudicial admission made by a party or his agent.") (citation omitted).

The Plaintiffs' opposition merely restates paragraph 33 of the TAC and cites

a few cases holding that "[u]nwarranted seizures are presumptively unreasonable." (ECF No. 76 ("Opp'n"), 3:19–27.) It does not identify a County employee that seized them or explain how their seizure was unwarranted given the circumstances. Because the Plaintiffs have failed to allege a County employee violated their constitutional rights, their *Monell* claim on this basis fails. *See Villegas v. Gilroy Garlic Festival Ass'n,* 541 F.3d 950, 957 (9th Cir. 2008) (en banc) (if "there is no constitutional violation, there can be no municipal liability").

### b. Policy of Providing Intrusive Medical Exams (¶ 107(b))

The Plaintiffs claim the County's policy of "subjecting minors to highly invasive medical examinations without parental consent, a warrant, or exception to the warrant requirement" violated their Fourth Amendment rights to be free from unlawful searches and seizures. (TAC, ¶¶ 106–110.)

The County moves to dismiss on the grounds that (1) the Plaintiffs do not allege that JZ.H received a medical exam and he cannot vicariously assert a claim, and (2) the Plaintiffs do not adequately allege a policy or long-standing custom was the "moving force" behind the purported violations. (Mot., 9:18–10:15.)

The Plaintiffs' opposition fails to address the County's argument that JZ.H cannot vicariously assert a claim for JQ.H's medical exam. The Court therefore dismisses the claim to the extent that it was being vicariously asserted. *Rakas v. Illinois,* 439 U.S.128, 133–34 (1978) ("Fourth Amendment rights are personal rights which . . . may not be vicariously asserted.").

The Plaintiffs' opposition also fails to explain how the County's alleged policy or long-standing custom was the "moving force" behind their purported constitutional violations. (Opp'n, 4:1–11.) Instead, it cites paragraphs 25, 28, and 68 of the TAC, alleging that JQ.H was "strip searched" and medically examined without Ms. Harris's consent. None of the cited pleadings address the County's arguments.

The allegations cited in the opposition pertain exclusively to JQ.H's medical

examination. (TAC, ¶¶ 25, 28, 68.) "A plaintiff cannot demonstrate the existence of a municipal policy or custom based solely on a single occurrence of unconstitutional action by a non-policymaking employee." *McDade v. West,* 223 F.3d 1135, 1141 (9th Cir. 2000). The Plaintiffs have taken JQ.H's medical exams and cast them as "policies" and "customs." However, the Ninth Circuit has held that "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *see Rivera v. Cty. of Los Angeles*, 745 F.3d 384, 398 (9th Cir. 2014).

Nor is the Court bound to accept Plaintiffs' unsupported legal conclusions as true. *Iqbal,* 556 U.S. at 678. The Plaintiffs do not allege a sufficient causal connection between the County's alleged policy and JQ.H's medical exams. *Harris*, 489 U.S. at 389; *Connick*, 563 U.S. at 60. It is clear from the allegations that the medical exams were conducted to corroborate serious allegations of child abuse, not pursuant to some unidentified County policy.

The Court dismisses the *Monell* claim on the basis of JH.Q's medical exams because the Plaintiffs have failed to allege customs, policies, or practices that are "of sufficient duration, frequency and consistency to constitute an actionable policy or custom." *Trevino*, 99 F.3d at 920.

c. Policy of Judicial Deception (¶¶ 107(c), (e)–(g))

The Plaintiffs claim the County's policy of submitting false and misleading statements and/or omitted exculpatory evidence violated their Fourth Amendment rights to be free from unlawful searches and seizures. (TAC, ¶¶ 106–110.)

The County moves to dismiss on the grounds that (1) the Plaintiffs do not adequately allege a claim for judicial deception, and (2) the Plaintiffs do not adequately allege a policy or long-standing custom was the "moving force" behind the purported violations. (Mot., 5:13–9:17, 10:3–10:15.)

In opposition, the Plaintiffs point to paragraphs 40, 47, and 52 of the TAC, alleging they were coached and coerced to make their statements outlined in the Detention report, and that now-dismissed Defendants Rady and Wright assisted in fabricating evidence submitted to the juvenile dependency court.

"[T]o prevail on a claim of judicial deception in a child abuse or custody proceeding, a plaintiff must show that '(1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty.'" *Keates v. Koile*, 883 F.3d 1228, 1240 (9th Cir. 2018) (quoting *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017)). A plaintiff asserting a claim of judicial deception "must make (1) a substantial showing of deliberate falsehood or reckless disregard for truth, and (2) establish that but for the dishonesty, the challenged action would not have occurred." *Hart v. Cty. of Los Angeles*, 649 F. App'x 462, 463 (9th Cir. 2016) (quotation marks and citation omitted). A claim of judicial deception may not be based on statements resulting from negligence or good faith mistakes, "[n]or may a claim of judicial deception be based on an officer's erroneous assumptions about the evidence he has received." *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009).

The Plaintiffs fail to allege a plausible claim for judicial deception. Mischaracterizing witness testimony may establish a claim for judicial deception. *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010). The Plaintiffs, however, fail to allege that any of their statements contained in the Detention Report were false. The TAC makes repeated references to fabricated evidence, but does not specify which statements or evidence were falsified.

Finally, the Plaintiffs do not specify which exculpatory evidence was withheld from the juvenile dependency court. The notes concerning the "faint" marks were disclosed to the juvenile dependency court in the Detention Report. (Custody Order (under seal), 10–15.) Regardless, an alleged failure to point out inconsistencies to the court does not amount to "deliberate falsity or reckless

disregard of the truth of the statements in the affidavit." *See Hervey v. Estes*, 65 F.3d 784, 789 (9th Cir. 1995).

Given the extensive corroborating evidence presented in the Detention Report and the limited exculpatory value of "faint" markings, the Plaintiffs have not plausibly alleged that any misstatements or omissions resulted in their constitutional rights being violated. *See Smith v. Almada,* 640 F.3d 931, 937–38 (9th Cir, 2011).

d. <u>Failure to Train (¶ 107(d))</u>

The Plaintiffs claim the County's "deliberate indifference in implementing a policy of inadequate training, and/or by failing to train its officers, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals, including those under the Fourteenth Amendment, when performing actions related to child abuse and dependency type proceedings" violated their Fourth Amendment rights to be free from unlawful seizures. (TAC, ¶¶ 106–110.)

The County moves to dismiss on the ground that the Plaintiffs do not adequately allege that a failure to train was the "moving force" behind the purported violations. (Mot., 5:13–9:17, 10:3–10:15.)

The Plaintiffs' opposition largely fails to address the County's argument. It repeats paragraphs 108 and 109 of the TAC, which are legal conclusions accusing the County of a failure to train without more. (Opp'n, 4:26–5:9.)

The Court therefore grants the County's motion to dismiss based on the Plaintiffs' failure to train claim. A local government's liability under § 1983 is at "its most tenuous," when the claim is based on a failure to train. *Connick*, 563 U.S. at 61. Failure to train may amount to a policy of "deliberate indifference," if the need to train was obvious and the failure to do so made a violation of constitutional rights likely. *Harris,* 489 U.S. at 390. "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." 563 U.S. at 62. "Without notice that a course of

training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* Similarly, a failure to supervise that is "sufficiently inadequate" may amount to "deliberate indifference." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989). Mere negligence in training or supervision, however, does not give rise to a *Monell* claim. *Id.*

Here, the Plaintiffs' *Monell* claim based on the County's failure to train lacks any factual allegations that would separate them from the "formulaic recitation of a cause of action's elements" deemed insufficient by *Twombly*. *See* 550 U.S. at 555. The Plaintiffs alleged only that (1) the County "fail[ed] to establish, implement and follow the correct and proper Constitutional policies, procedures, customs and practices; by failing to properly select, supervise, train, control, and review its agents and employees as to their compliance with Constitutional safeguards," and (2) "knew, or should have known, that by breaching the abovementioned duties and obligations that it was foreseeable that they would, and did, cause Plaintiffs to be injured and damaged by their wrongful policies, or deliberate lack thereof or deliberate indifference to the need for such policies and/or training . . . ." (TAC, ¶¶ 108–09.)

The TAC lacks any factual allegations regarding key elements of the *Monell* claims, or, more specifically, any facts demonstrating that their constitutional deprivations were the result of the County's failure to train its employees. *See Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2019) (dismissing "*Monell* and supervisory liability claims [that] lack[ed] any factual allegations that would separate them from the 'formulaic recitation of a cause of action's elements' deemed insufficient by *Twombly*"). Nor do the Plaintiffs identify any deficiencies in the County's training or other incidents that would have put the County on notice that it's training was deficient. *See Flores v. Cty. of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (affirming dismissal of *Monell* claim and holding that "isolated

incidents of criminal wrongdoing by one deputy other than [defendant deputy] do not suffice to put the County . . . on 'notice that a course of training is deficient in a particular respect,' nor that the absence of such a course 'will cause violations of constitutional rights.'")

Regarding supervisory liability, the Plaintiffs allege only "negligent" hiring and training and pointed to no instances of deliberate indifference and thus have failed to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** the County's motion to dismiss claim four.  The County is **DISMISSED** from the case.  This Order serves as a final judgment as to the County under Fed. R. Civ. P. 54(b) because there is no just reason for delay and the Court has now adjudicated all claims against this defendant.

**IT IS SO ORDERED.**

Dated:  November 30, 2020

_____
Honorable Barry Ted Moskowitz
United States District Judge